**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-1323**

_____

DIANNA WITTENBERG,

              Plaintiff - Appellant,

     v.

FIRST INDEPENDENT MORTGAGE COMPANY, a subsidiary of First
Independent Bank; GEORGE W.R. GLASS; WELLS FARGO BANK, N.A.,
Successor by Merger to Wells Fargo Home Mortgage; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.; US BANK NATIONAL
ASSOCIATION, Trustee for BANC of America Corporation; BANK
OF AMERICA, NATIONAL ASSOCIATION, parent corporation of Banc
of America Funding Corporation & Banc of America Funding
Corporation 2006-G Trust; SAMUEL I. WHITE; SENECA TRUSTEES,
LLC,

              Defendants – Appellees,

        and

CAMERON TITLE, LLC; DOES 1-50, being parties to be named
later,

              Defendants.

_____

**No. 13-1366**

_____

DIANNA WITTENBERG,

              Plaintiff - Appellant,

     v.

FIRST INDEPENDENT MORTGAGE COMPANY, a subsidiary of First
Independent Bank; GEORGE W.R. GLASS; WELLS FARGO BANK, N.A.,

Successor by Merger to Wells Fargo Home Mortgage; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; US BANK NATIONAL ASSOCIATION, Trustee for BANC of America Corporation; BANK OF AMERICA, NATIONAL ASSOCIATION, parent corporation of Banc of America Funding Corporation & Banc of America Funding Corporation 2006-G Trust; SAMUEL I. WHITE; SENECA TRUSTEES, LLC,

                    Defendants – Appellees,

          and

CAMERON TITLE, LLC; DOES 1-50, being parties to be named later,

                    Defendants.

————————————

Appeals from the United States District Court for the Northern District of West Virginia, at Martinsburg.  John Preston Bailey, Chief District Judge.  (3:10-cv-00058-JPB)

————————————

Submitted:  June 20, 2013                    Decided:  July 31, 2013

————————————

Before SHEDD, DUNCAN, and DIAZ, Circuit Judges.

————————————

Affirmed by unpublished per curiam opinion.

————————————

Michael M. Brownlee, BROWNSTONE, P.A., Winter Park, Florida, for Appellant.  Joseph S. Dowdy, NELSON MULLINS RILEY & SCARBOROUGH LLP, Raleigh, North Carolina; Jeremy C. Hodges, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellees Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems, Inc., US Bank National Association, and Bank of America;  Debra Lee Hovatter, SPILMAN THOMAS & BATTLE PLLC, Morgantown, West Virginia, for Appellee First Independent Mortgage Company;  Ancil G. Ramey, STEPTOE & JOHNSON, LLP, Huntington, West Virginia, for Appellee George W.R. Glass; Chris R. Arthur, SAMUEL I. WHITE PC, Charleston, West Virginia, for Appellees Samuel I. White and Seneca Trustees, LLC.

————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dianna Wittenberg appeals the dismissal of her claims and the grant of summary judgment against her in a lawsuit arising out of the issuance and securitization of, and threatened foreclosure on, her mortgage. Wittenberg unsuccessfully alleged numerous counts against various defendants. For the reasons that follow, we affirm.

## I.

### A.

According to Wittenberg's First Amended Complaint, in 2005, Wittenberg met a mortgage loan broker employed by First Independent Mortgage Company ("First Independent") named Andy Swanson. Swanson told Wittenberg that he could obtain refinancing for her home loan with beneficial terms. Wittenberg agreed to refinance her loan, and Swanson filled out her loan application. Wittenberg alleges that in doing so, he misstated her monthly income, despite her protestations.

In February 2006, Wittenberg attempted to close on the loan. However, after signing some of the proffered documents, she walked away from the closing because the closing costs were greater than Swanson had represented. Swanson rescheduled the closing, and again, Wittenberg walked away because the documents showed different closing costs. A third time, on March 21,

4

2006, after partially signing a number of loan documents, Wittenberg declined to finalize the closing. At the end of each failed closing, Wittenberg was informed that the papers she had signed would be shredded.

Finally, on March 27, 2006, Wittenberg closed on her loan at the office of attorney George Glass ("Glass"). According to Wittenberg, she signed, initialed, and dated each page of the loan documents, including a promissory note of $416,000 and a deed of trust. The loan terms did not require Wittenberg to pay an amount for escrow from property taxes and insurance, as she was to pay for those herself. Wittenberg did not receive copies of the loan documents that day. Glass said he would mail copies of them to her, but never did. Wittenberg did not receive copies of the documents until she went to Glass's office in June 2006 to retrieve them. According to Wittenberg, the documents she obtained did not accurately reflect the loan terms to which she had agreed.

A year later, Wells Fargo Bank N.A. ("Wells Fargo"), the servicer of Wittenberg's loan, began to send her letters threatening to add tax and insurance escrows to her monthly payments. Wittenberg contacted Wells Fargo to address this issue, but Wells Fargo did not respond. When Wittenberg went to the county tax office to pay her property tax, she learned that Wells Fargo had already paid the tax. When Wittenberg tried to

5

make her usual mortgage payment, Wells Fargo refused to accept it unless she included an additional amount for escrow for taxes.

In December 2008, Wittenberg and a Wells Fargo specialist named Leann Miller ("Miller") reached an agreement to avoid default whereby Wells Fargo would accept Wittenberg's monthly payments without escrow until Wells Fargo could investigate the escrow issue and return the loan to non-escrow status. Miller also encouraged Wittenberg to modify her loan to obtain a fixed rate. As part of the modification, Miller offered Wittenberg a "payment moratorium" for six months, and represented that Wells Fargo would extend the loan term, reduce the interest rate, and reduce Wittenberg's monthly payments. In reliance on Miller's representations, Wittenberg submitted the required documents for the modification and stopped making monthly payments.

On February 11, 2009, Wells Fargo offered Wittenberg a loan modification, which reduced her interest rate and provided that her missed payments would be repaid over the life of the loan. Wittenberg declined this proposed modification, because it would have increased her monthly payment.

Wells Fargo refused to accept subsequent monthly payments from Wittenberg, claiming that she was three months in arrears. Wittenberg contacted Wells Fargo, but Wells Fargo would not explain why the monthly payment had increased. Wittenberg

6

discussed the issue with Miller, who informed Wittenberg that Wells Fargo was participating in the Home Affordable Modification Program ("HAMP") but did not answer any questions about the program. Miller directed Wittenberg to resubmit her documentation to the Wells Fargo Loss Mitigation Department, which she did.

In May 2009, Wittenberg received a second modification offer from Wells Fargo, proposing to lower her monthly payments. However, Wittenberg believed that her monthly payments under the HAMP would have been lower than Wells Fargo's proposed payments. Wells Fargo informed her that she was ineligible for a HAMP modification.

On June 9 and 10, 2009, Wittenberg sent Wells Fargo letters requesting documents and information concerning the origination, securitization, assignment, and servicing of her loan. In response, on August 3, 2009, Wells Fargo provided Wittenberg with information about her loan, presenting the note signed by Wittenberg on March 21, 2006 as evidence of her underlying obligation and stating that the loan had originated on that date. Wells Fargo also presented a deed of trust purportedly dated March 27, 2006 and signed by Wittenberg. However, the deed of trust was devoid of Wittenberg's initials on the middle 13 pages, and it appeared that her initials had been forged on the initial page and that the date of the document had been

7

altered. Wells Fargo has never produced a March 27, 2006 note, despite Wittenberg's repeated requests.

At some point during this sequence of events, Mortgage Electronic Registration Systems, Inc. ("MERS"), the nominee for the lender, assigned the March 27, 2006 deed of trust to U.S. Bank, as Trustee for Banc of America Funding Corporation 2006-G. Wittenberg alleges that she did not approve this assignment.

On June 20, 2009, Samuel I. White, P.C. ("White"), the servicer of the debt, sent Wittenberg a letter on behalf of Wells Fargo seeking to collect the principal balance of her loan. Wittenberg sent a letter in response disputing the debt.

In August 2009, White recorded a Corporate Assignment of Deed of Trust purporting to assign Wittenberg's Deed of Trust to U.S. Bank National Association ("US Bank"), as Trustee for Banc of America Funding Corporation 2006-G. White also recorded a Substitution of Trustee and a Corrected Substitution of trustee, which purported to remove the original Trustee--Scully & Glass or H. Charles Carl, III--and appoint Seneca Trustees, Inc. ("Seneca") as Trustee.

On several occasions, Seneca scheduled foreclosure sales. Each time, Seneca notified Wittenberg that she could reinstate her loan by paying a certain amount prior to the sale. None of the sales ultimately took place, however.

8

On June 8, 2010, Wittenberg filed suit against, inter alios, Glass, First Independent; Wells Fargo; MERS; US Bank; Bank of America, National Association, the parent corporation of Banc of America Funding Corporation & Banc of America Funding Corporation 2006-G Trust ("Bank of America"); White; and Seneca.

Glass moved to dismiss the counts against him, in which Wittenberg alleged that he breached his fiduciary duty and committed negligence in his roles as closing attorney and trustee. The district court granted Glass's motion to dismiss.

Subsequently, on February 4, 2011, Wittenberg filed her First Amended Complaint, again alleging a number of counts, but excluding Glass as a defendant. She alleged, inter alia, negligence, for failure to exercise reasonable care in issuing her a loan and failing to preserve her original note and loan documents; breach of fiduciary duty; fraud; fraudulent, deceptive, or misleading representations in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101, et seq.; violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.; and civil conspiracy.

A number of the defendants moved to dismiss this complaint for failure to state a claim upon which relief could be granted, and the district court dismissed the majority of Wittenberg's

9

claims with prejudice. Following this decision, claims remained against Wells Fargo for (1) breach of contract and the implied duty of good faith and fair dealing; and (2) violation of the unfair or deceptive trade practices provisions of the WVCCPA. On February 10, 2012, the court granted summary judgment to Wells Fargo on those claims. Wittenberg does not appeal that decision.

Neither White nor Seneca moved for dismissal, but on November 7, 2011, they and Wittenberg filed cross motions for summary judgment on her claims against them. On February 10, 2012, the court granted summary judgment to White and Seneca.

On March 12, 2012, Wittenberg filed a notice of appeal. On October 12, 2012, she filed a motion to hold the case in abeyance until the district court ruled on a motion for relief from judgment under Federal Rule of Civil Procedure 60(b), which she filed with the district court on November 7, 2012. The district court denied her motion as untimely. She now appeals that order as well.

In sum, the following issues remain: (1) whether the district court erred in dismissing Wittenberg's breach of fiduciary duty and negligence claims; (2) whether the district court erred in dismissing Wittenberg's WVCCPA claim; (3) whether the district court erred in granting summary judgment to Seneca and White on Wittenberg's fiduciary duty, fraud, WVCCPA, and

10

FDCPA claims; (4) whether the district court erred in dismissing Wittenberg's claims based on alleged joint venture liability; and (5) whether the district court abused its discretion in denying Wittenberg's motion for relief from judgment. We discuss each in turn.

## II.

A. Dismissal of Breach of Fiduciary Duty and Negligence Claims

On appeal, Wittenberg first argues that it was error to dismiss her claims for breach of fiduciary duty (against Glass) and negligence (against Glass, First Independent, Wells Fargo, MERS, and US Bank) "simply because [she] did not specifically allege that the March 21 Note was different from the March 27 note." Appellant's Br. at 17. Wittenberg's argument rests on an erroneous apprehension of the pleading standard under Federal Rule of Civil Procedure 8. "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The district court correctly surmised that Wittenberg's claims based on the alleged difference between the two notes are little more than "naked assertions devoid of further factual enhancements." Id. (citation and internal quotation marks omitted). Moreover, even

11

after the court provided Wittenberg with a second opportunity--in the form of additional briefing--to explain how she was injured by the preservation and use of the allegedly incorrect note, she failed to do so.  Even now, on appeal, Wittenberg fails to detail what terms differed between the March 21 and March 27 notes.

## B.  Dismissal of WVCCPA Claim

Wittenberg next argues that the district court erred in dismissing her WVCCPA claim against Wells Fargo on the grounds that letters written by Wells Fargo or on its behalf claiming delinquency were fraudulent, deceptive, or misleading. Wittenberg failed to allege that her loan was not delinquent.[1] We agree with the district court that "[i]f, according to her own allegations, [Wittenberg] was delinquent, then the

---

[1] In her appellate brief, Wittenberg references a statement from the errata sheet she created following her deposition in which she asserts that the March 27 note created a ten-year adjustable rate mortgage ("ARM"), and that the March 21 note contained a more onerous, five-year ARM.  However, she made no mention of this alleged discrepancy in her pleadings, upon which the district court's dismissal decision was based, despite being allowed more than one opportunity to do so.  Moreover, her actual deposition testimony does not indicate such a fact, and a hardship letter she sent to Wells Fargo in 2009 indicates that she agreed to a five-year ARM.  J.A. 439-40.

foreclosure notices could not have been fraudulent, deceptive, or misleading as a matter of law." J.A. 155.[2]

C. Summary Judgment on Fiduciary Duty, Fraud, WVCCPA, and FDCPA

Claims

Wittenberg also appeals the district court's grant of summary judgment in favor of Seneca on her fiduciary duty and fraud claims and White on her WVCCPA, FDCPA, and fraud claims. Wittenberg's claims stem from her allegation that Seneca and White defrauded her by acting upon the invalid March 21, 2006 note.

1. Claims Against Seneca

With respect to her fiduciary duty claim, Wittenberg argues that "because while . . . a trustee does not have to ensure the validity of the debt, it must make sure that it has the authority to act on the debt." Appellant's Br. at 22. Wittenberg's argument is based on a misapprehension of the duties of a trustee under West Virginia law, which "does not

---

[2] The district court also held that, "to the extent [Wittenberg] argues that any claim of delinquency was fraudulent, deceptive, or misleading because she only became delinquent in reliance upon representations made by Wells Fargo during a potential loan modification, her claim is preempted [by the National Bank Act, 12 U.S.C. § 1 et seq. and the regulations promulgated thereunder]." J.A. 155-56. Because Wittenberg does not press the argument regarding delinquency resulting from reliance on such representations in her opening brief, we do not address the question of preemption.

13

require the trustee to review account records to ascertain the actual amount due prior to foreclosing . . . ." Lucas v. Fairbanks Capital Corp., 618 S.E.2d 488, 497 (2005). Indeed, "nothing in the language of W. Va. Code § 38-1-3 . . . suggest[s] that a trustee has a duty to consider objections to the foreclosure sale." Id. Wittenberg defaulted on her loan, and the Deed of Trust provides for the invocation of the power of sale. Wells Fargo alerted Seneca of the default, and Seneca simply scheduled a foreclosure sale as demanded. Under these facts, which Wittenberg does not dispute, the district court correctly held that she could not prevail against Seneca in an action for breach of fiduciary duty.

As for fraud, Wittenberg argued below that Seneca defrauded her by misrepresenting that it had the authority to foreclose on her property. However, as Seneca has not actually foreclosed on her property, the district court correctly determined that Wittenberg had failed to present a genuine issue of material fact as to whether the alleged misrepresentations caused her damages sufficient for a finding of fraud.

### 2. Claims Against White

Wittenberg claimed she was defrauded by White, which, she alleged, created fraudulent Substitution of Trustee documents. She alleged that these documents contained false statements regarding the owner of her note and the beneficial owner of the

14

Deed of Trust. Her arguments on appeal with respect to this claim are underdeveloped at best, but to the extent that she challenges the district court's reasoning as to her fraud claim against White, we find that the district court was correct in rejecting her argument based on her "general theory that the securitization of her loan was unlawful," J.A. 596, which, as discussed below, is without merit, see infra Part II.D.

Wittenberg also challenges the district court's grant of summary judgment to White on her WVCCPA and FDCPA claims. However, the extent of her argument on this front in her opening brief is that "Samuel White [sic] actions are arguably more culpable [than Seneca's], as it prepared the Substitution of Trustee form, as well as the Corrected Substitution of Trustee forms. This is sufficient for liability under the WVCCPA and FDCPA." Appellant's Br. at 24. This conclusory statement does not provide much in the way of an argument for this court to address on appeal. Cf. United States v. Bowles, 602 F.3d 581, 583 n.1 (4th Cir. 2010) (noting that arguments not raised in an opening brief are waived). In any event, we have reviewed the district court's reasoning and conclusions as to Wittenberg's WVCCPA and FDCPA claims against White and find no error.

D. Dismissal of Claims Based on Alleged Joint Venture Liability

Finally, Wittenberg appeals the district court's dismissal of various claims based on joint venture liability. Wittenberg

15

correctly states that under West Virginia law, joint venturers are "jointly and severally liable for each other's misdeeds," and that courts must determine whether a plaintiff has properly pled (1) the elements of a joint venture, and (2) that a wrongful act was committed within the scope of the joint venture. Appellant's Br. at 28-29. Wittenberg argues that the district court employed the wrong test by examining not whether a joint venture existed, but whether the alleged joint venturers' "alleged participation in a plan to securitize [Wittenberg's] note is unlawful." J.A. 144. However, this is simply a more specific statement of the latter of the two requirements Wittenberg herself lays out; we find no error in the court's mode of analysis.

Wittenberg also argues that, although securitization per se is not unlawful, she alleged specific unlawful acts, including the sale of her loan before her closing date. However, these allegations were not included in her First Amended Complaint below, and we will not countenance them on appeal. The acts Wittenberg did allege in her complaint that related to the securitization of her loan simply were not illegal. See J.A. 144-45 ("[T]he plaintiff has failed to cite a single case, and this Court's independent research was unable to discover one, which stands for the proposition that securitization is unlawful."). Indeed, Wittenberg herself acknowledges that

16

"securitization of a loan, in and of itself, is lawful." Appellant's Br. at 29. She maintains, however, that a "conspiracy" to issue her loan and securitize it, which resulted in threatened foreclosure proceedings, is distinct and unlawful. She makes no credible distinction between these concededly lawful acts and those she asserts were illegal. To the extent her First Amended Complaint alleges illegal actions by the Appellees related to the alleged joint venture, these allegations were mere "naked assertions devoid of further factual enhancements." Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

E.   Denial of Motion for Relief from Judgment

Wittenberg also appeals the district court's denial of her Rule 60(b) motion for relief from judgment. A Rule 60(b) motion "must be made within a reasonable time--and . . . no more than a year after the entry of judgment or order . . . ." Fed. R. Civ. P. 60(c)(1). The first two of the three orders Wittenberg contests were entered more than one year before she filed her motion. The summary judgment order was entered approximately nine months before her motion. The district court ruled that the motion was time-barred as to all three orders.

We have upheld denials of Rule 60(b) motions as untimely on several occasions entailing delays significantly shorter than nine months. See McLawhorn v. John W. Daniel & Co., 924 F.2d

17

535, 538 (4th Cir. 1991) (collecting cases). Moreover, we find no valid reason for the delay. Wittenberg's motion was based upon an opinion issued by another court on February 9, 2012--the day before the district court entered its final order in this case. She presents no compelling explanation for why it took her more than nine months from the issuance of that opinion to file her motion. We therefore hold that the district court did not abuse its discretion in denying her motion for relief from judgment.

### III.

Accordingly, we affirm the district court's decisions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED

18